**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**LAUREN STOKES,**                                                                          **PLAINTIFF**

**v.**                                                       **Case No.: 3:25-cv-307-GHD-RP**

**GLENN BOYCE, CHANCELLOR OF
THE UNIVERSITY OF MISSISSIPPI,**
**In his official and personal capacities,**                                **DEFENDANT**

## DEFENDANT'S BRIEF IN SUPPORT OF HIS MOTION TO DISMISS

      This Court should dismiss Plaintiff Lauren Stokes' First Amendment retaliation claim at this early stage because her allegations reflect the immediate disruption caused by her social media post in the aftermath of Charlie Kirk's death. This is not the ordinary case that requires a more factually developed record before the Court conducts a *Pickering* analysis.

      Immediately after her social media post went viral, the Plaintiff and the University realized that Plaintiff could not perform her job responsibilities, and the University concluded that her continued employment would inevitably disrupt the University's operations. Contrary to Plaintiff's belief that the University must "show the speech disrupted its actual operations" (Am. Compl., at ¶¶ 45 and 47 [Doc. 3]), the law does not require the University to await the overflow onto campus of the same disruption Plaintiff experienced. With a campus full of thousands of employees and students to run, the University could not otherwise afford to have its internal operations crippled by the wave of threats and other disruption that erupted from Plaintiff's post. Accordingly, the University terminated Plaintiff's employment.

      Plaintiff has now sued the University's Chancellor in his official and individual capacities, alleging violations of her First Amendment rights. Plaintiff's own allegations, however, do not carry her where she wants to go. Because Plaintiff's operative complaint does

not plausibly plead that her interest in speaking outweighed the University's interest in maintaining an efficient workplace, this Court should dismiss her Amended Complaint.

## FACTS

After the death of podcaster Charlie Kirk on September 10, 2025, Plaintiff reposted an Instagram post stating that Kirk was a "[white] supremacist and reimagined Klan member[]" and that the original poster had "no prayers to offer Kirk or respectable statements against violence." Am. Compl., at ¶¶ 13 and 15 [Doc. 3]. Kirk was scheduled to speak at the University on October 29, 2025, in an event jointly hosted by Turning Point USA at Ole Miss (a registered student organization) and the Declaration of Independence Center for the Study of American Freedom. *See Charlie Kirk: The American Comeback Tour*, https://eventcalendar.olemiss.edu/event/charlie-kirk-hosted-by-the-tpusa-chapter-at-university-of-mississippi-ole-miss-the-american-comeback-tour (last accessed Dec. 1, 2025).[1]

Plaintiff's Instagram repost caused such immediate disruption in her own life that she removed it the same evening and posted that she made her earlier post "in a heated moment" and "I apologize to those I have offended and look forward to getting off the internet to reevaluate kindness, privacy, and respect for all." Am. Compl., at ¶ 16 [Doc. 3]. Specifically, Plaintiff's Instagram repost caused an online attack on her and threats to her physical safety. *Id.* at ¶¶ 19, 68 and 69. In fact, Plaintiff grew so concerned for her own safety that she "sought guidance" from University's Human Resources Department and the University Police Department first thing the next morning. *Id*. at ¶ 19. The University, immediately recognizing the seriousness of the situation, expressed sympathy to Plaintiff and made her feel protected. *Id.* at ¶ 22. The

---

[1] "It is clearly proper in deciding a 12(b)(6) motion to take judicial notice of a matter of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *see also Swindol v. Aurora Flight Scis. Corp.*, 805 F.3d 516, 519 (5th Cir. 2015) (taking judicial notice of public records available on state government website).

University's police department even met with Plaintiff and counseled her to ask the Oxford Police Department to monitor her restaurant. *Id*. at ¶ 19.[2]

As evidence of the level of disruption her repost caused, Plaintiff and her husband received harassing phone calls and emails, including death threats, nonstop for days. *Id.* at ¶ 68. In fact, Plaintiff so feared for her safety that she left town and closed her restaurant for two weeks. *Id.* at ¶ 69. The University, however, could not close and escape like Plaintiff did when the disruption spilled over to the University. Thus, the University made the best decision under these dire circumstances: terminate Plaintiff's employment and prevent the disruption faced by Plaintiff from further manifesting on campus.

By 9:00 a.m. on September 11, 2025, the University placed Plaintiff on administrative leave with pay. Ex. "A" (Administrative Leave Letter).[3] Plaintiff then left campus and "communicated the seriousness" of the situation to her husband. Am. Compl., at ¶ 21 [Doc. 3]. The University asked for Plaintiff's resignation that same morning. After receiving no response from Plaintiff, it terminated her employment around 12:50 p.m. *Id*. at ¶¶ 23-25. Shortly thereafter, the University published a statement announcing that the University no longer employed the staff member who had reposted the message about Charlie Kirk. *Id*. at ¶ 26.

## STANDARD

A Rule 12(b)(1) motion challenges the plaintiff's invocation of federal subject matter jurisdiction. *See Krim v. PCOrder.com, Inc*., 402 F.3d 489, 494 (5th Cir. 2005). When one party challenges subject matter jurisdiction, the party asserting jurisdiction bears the burden of establishing jurisdiction. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *In re*

---

[2] Plaintiff and her husband own a local restaurant. *Id.* at ¶¶ 7-9 and 68.
[3] This letter is quoted in Plaintiff's Amended Complaint. Am. Compl., at ¶ 20 [Doc. 3]. *See Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (noting that, in ruling on 12(b)(6) motions, courts may consider documents incorporated into the complaint by reference and quotation).

*FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 646 F.3d 185, 189 (5th Cir. 2011).

Rule 12(b)(6) authorizes dismissal for failure to state a claim. "To avoid dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "To be plausible, the complaint's factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 570 (internal quotation omitted). While the Court must accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff, *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008), it does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (*quoting Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)); *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the complaint's framework, they must be supported by factual allegations.").

## ARGUMENT

1. *The Chancellor is immune from certain of Plaintiff's claims.*

In his official capacity, the Chancellor is immune from Plaintiff's claims for money damages. The Eleventh Amendment provides that: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. AMEND. XI. The Amendment "grants a State immunity from suit in federal court by citizens of other States, and by its own citizens as well." *Lapides v. Bd. of Regents*, 535 U.S. 613, 616 (2002) (citation omitted). The University is an arm of the State of Mississippi and is immune from Plaintiff's claims in federal court. *See Doe v. Univ. of Miss.*, 361 F. Supp. 3d 597, 604-06

(S.D. Miss. 2019) (dismissing Section 1983 and breach of contract claims against University of Mississippi due to Eleventh Amendment immunity).

The University's Eleventh Amendment immunity extends to Plaintiff's claims against the Chancellor in his official capacity. *See Chaney v. La. Work Force Comm'n*, 560 F. App'x 417, 418 (5th Cir. 2014) (holding that claim against "a state official in his official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment") (*citing Hafer v. Melo*, 502 U.S. 21, 25 (1991)). Under *Ex parte Young*, though, Plaintiffs may pursue claims alleging ongoing violations of federal law that seek relief properly characterized as prospective. *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002); *see also Corn v. Miss. Dep't of Pub. Safety, 954 F.3d 268, 275 (5th Cir. 2020)* (holding that "the Supreme Court limits the Ex Parte Young exception to 'cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past.'") (quoting Papasan v. Allain, 478 U.S. 265, 277-78 (1986)). A request for declaratory judgment that the Chancellor violated Plaintiff's First Amendment rights is "fundamentally retrospective because it does not relate to an ongoing violation of [Plaintiff's] federal rights; instead, it pertains to [her] termination." *Corn v. Miss. Dep't of Pub. Safety*, 954 F.3d 268, 276 (5th Cir. 2020). Thus, the Eleventh Amendment bars Plaintiff's claims against the Chancellor in his official capacity for money damages and declaratory relief.

The Chancellor is also not a "person" for purposes of Section 1983 in his official capacity. Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United State or other person within the jurisdiction

5

thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983. Neither a State, an arm of the State, nor an individual employed by such entity acting in his or her official capacity is considered a "person" acting under color of law. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989); *Stauffer v. Gearhart*, 741 F.3d 574, 583 (5th Cir. 2014); *McNair v. Mississippi*, 43 F. Supp. 3d 679, 685 (N.D. Miss. 2014).

The Court lacks jurisdiction over Plaintiff's claims for money damages and declaratory relief against the Chancellor in his official capacity and should dismiss those claims.

### 2.  *The Complaint fails to allege a plausible First Amendment Claim.*

A government employee's First Amendment claim has five elements. First, there is the threshold question of whether the employee spoke as a citizen or pursuant to her official duties. *Wetherbe v. Tex. Tech. Univ. Sys.*, 138 F.4th 296, 303 (5th Cir. 2025) (*citing Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). Official-duty speech is not protected by the First Amendment. *Id*. A government employee alleging retaliation because of private-citizen speech must also prove (1) she suffered an adverse employment decision; (2) her speech involved a matter of public concern; (3) her interest in speaking outweighed the governmental defendant's interest in promoting efficiency; and (4) the protected speech motivated the defendant's conduct. *Id*. (*citing Hurst v. Lee County*, 764 F.3d 480, 484 (5th Cir. 2014)). While the Chancellor reserves the right to challenge any of these elements at a later time, this Court should dismiss Plaintiff's claim at this stage because her pleadings do not plausibly allege that her interest in speaking outweighed the University's interest in promoting efficiency in the workplace.

The question of whether a government employee's interest in speaking outweighs her

6

employer's interests in maintaining discipline and efficiency in the workplace involves a case-specific balancing of those interests. *See Pickering v. Board of Education*, 391 U.S. 563, 568 (1968); *Garza v. Escobar*, 972 F.3d 721, 727 (5th Cir. 2020); *Gunaca v. Texas*, 65 F.3d 467, 474 (5th Cir. 1995). The application of the *Pickering* balancing test is a question of law, and this Court may perform that test at the motion to dismiss stage where "'reasonable inferences drawn from a complaint' do not plausibly show that the employee's interests outweigh the employer's." Garza, 972 F.3d at 728 (*quoting Burnside v. Kaelin*, 773 F.3d 624, 628 (5th Cir. 2014)) (also noting that, "if a plaintiff pleads her way into *Pickering* balancing," courts are not required "to ignore the very facts she pled – indeed, at this stage, the court must accept them as true").

In determining whether Plaintiff's speech outweighs the University's interest in the efficient provision of public services, the Court should consider "whether the speech was likely to generate controversy and disruption, impede[] the [] general performance and operation, and affect[] working relationships necessary to the department's proper functioning." *Johnson v. Miller*, 126 F.4th 1020, 1030 (5th Cir. 2025) (*citing Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 223 (5th Cir. 1999)); *see also Bevill v. Wheeler*, 103 F.4th 363, 378 (5th Cir. 2024) (noting courts may consider whether employee's speech "impedes the performance of the speaker's duties") (*citing Rankin v. McPherson*, 483 U.S. 378, 388 (1987)). Moreover, "it is not necessary 'for an employer to allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action.'" *Graziosi v. City of Greenville Miss.*, 775 F.3d 731, 741 (5th Cir. 2015) (*citing Connick v. Myers*, 461 U.S. 138, 152 (1983)). Rather, "courts have consistently given substantial weight to government employers' reasonable predictions of disruption, even when the speech involved is on a matter of public concern." *Id*. (*citing Nixon v. City of Houston*, 511 F.3d 494, 499 n.8 (5th Cir. 2007)).

7

Plaintiff has failed to plausibly allege that her private interests outweigh the University's interest in efficiency in the workplace. Taking her allegations as true, Plaintiff reposted controversial statements about a recently killed public figure to a public or semi-public audience. These statements immediately elicited a negative reaction, which led to her deleting the post, publicly apologizing, and "getting off the internet." By the next morning, the reaction to her post had escalated to the point that she could not perform her regular job duties and instead sought guidance from the University's HR and police departments. The University placed her on administrative leave because of the "seriousness" of the situation, a decision which she notably does not challenge in this lawsuit and with which she apparently agreed at the time. Am. Compl., at ¶¶ 19-22 [Doc. 3]. Plaintiff's allegations establish that her Instagram post generated controversy, impeded her duties, and impacted her department's operations.

Plaintiff's Amended Complaint also fails to plausibly allege that the nature of her speech outweighed the University's interest in efficiency. Plaintiff does not allege, for example, that the Instagram post contains allegations of corruption or misbehavior by public officials, which the Fifth Circuit has held outweigh the government's interest in efficiency. *See Bevill v. Wheeler*, 103 F.4th 363, 378 (5th Cir. 2024); *Breaux v. City of Garland*, 205 F.3d 150, 157 n.10 (5th Cir. 2000). Nor was it simply a "private conversation with another employee." *Rankin v. McPherson*, 483 U.S. 378, 389 (1987).

Because Plaintiff has failed to plausibly allege that her interests outweighed the University's, she has failed to state a First Amendment claim against the Chancellor in his official or individual capacity. This Court should dismiss the Amended Complaint.

8

*3.     The Chancellor is entitled to qualified immunity in his individual capacity.*

Even if Plaintiff could state a plausible First Amendment claim, the qualified immunity defense prevents pursuit of that claim against the Chancellor in his individual capacity. Designed to protect "all but the plainly incompetent or those who knowingly violate the law," *Malley v. Briggs*, 475 U.S. 335, 341 (1986), qualified immunity "protects public officials from suit unless their conduct violates a clearly established constitutional right." *DePree v. Saunders*, 588 F.3d 282, 287 (5th Cir. 2009) (*citing Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003)). The qualified immunity standard "gives ample room for mistaken judgments." *DePree*, 588 F.3d 282 at 287 (*citing Malley*, 475 U.S. at 343).

The Fifth Circuit asks a "standard two-part qualified immunity question: whether the conduct was unconstitutional and whether the unconstitutionality was 'clearly established' at the time the challenged conduct occurred." *Doe v. Jewell*, 151 F.4th 236, 2025 U.S. App. LEXIS 20941, at *7 (5th Cir. Aug. 15, 2025). "Plaintiffs carry the burden of demonstrating that qualified immunity is inappropriate." *Id.* at *8. *See also Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (holding that "the plaintiff has the burden to negate the assertion of qualified immunity once properly raised."). The plaintiff must point to controlling authority or a robust consensus of persuasive authority that placed his rights beyond debate. *See Wigginton v. Jones*, 964 F.3d 329, 337 (5th Cir. 2020) (*citing Morgan v. Swanson*, 659 F.3d 359, 371-72, 382 (5th Cir. 2011)).

The Court should not define clearly established law at a "high level of generality" *Morrow v. Meachum*, 917 F.3d 870, 875 (5th Cir. 2019) (*citing Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). Rather, a plaintiff must show the public official had "fair notice" that his particular conduct was unlawful. *Id.* (*citing Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)). Here, even if Plaintiff had identified a constitutional violation, this Court must dismiss Plaintiff's

9

individual capacity claims against the Chancellor because no clearly established law places beyond debate the constitutional issue before the Court. No clearly established law existed at the time of Plaintiff's termination holding that her interests outweighed the University's interests under the circumstances Plaintiff alleges.

 The Fifth Circuit acknowledged more than thirty years ago that the nature of *Pickering* balancing would seldom permit the denial of qualified immunity:

> [o]ne consequence of case-by-case balancing is its implication for the qualified immunity of public officials whose actions are alleged to have violated an employee's first amendment rights. There will rarely be a basis for *a priori* judgment that the termination or discipline of a public employee violated "clearly established" constitutional rights.

*Noyola v. Tex. Dep't of Human Res.*, 846 F.2d 1021, 1025 (5th Cir. 1988). While qualified immunity is certainly not mandated in a *Pickering* case, no Fifth Circuit caselaw or a "robust consensus" of persuasive authority indicates that a public employer may not terminate an employee when the employee's controversial social media post disrupts agency operations under the circumstances of this case.

 This is not surprising, as each balancing necessarily requires consideration of disparate facts and circumstances. Consider the circumstances here – the Chancellor had to decide which interest outweighs the other as a crisis unfolded in real time. No definitive judicial guidance directs to an answer this question. In fact, the Fifth Circuit recently held that qualified immunity appropriately protected a public servant who terminated an employee over a social media post much less disruptive than Plaintiff's.

 In *McLin v. Twenty-First Judicial District*, the chief judge for Louisiana's Twenty-First Judicial District terminated a clerical employee after a co-worker discovered her Facebook post apparently expressing approval of a motorist who drove a vehicle through a crowd at a rally

10

protesting George Floyd's murder. 79 F.4th 411, 414 (5th Cir. 2023). After learning of the post, the chief judge told the clerical employee that, "[i]n today's world that we live in, I have no other choice but to terminate you. You need to watch what you say and do." *Id*. at 415.

The Fifth Circuit held that the qualified immunity defense protected the chief judge from the plaintiff's First Amendment retaliation claim at the 12(b)(6) stage because she had failed to demonstrate that her interests outweighed her employer's. *Id*. at 420. The Court found that the *Pickering* balancing test favored the employer both because the plaintiff's comments posed a threat to a harmonious workplace and because the public Facebook post could reflect poorly on that image of the Twenty-First Judicial District. *Id*. at 420. The Court held the law was "sufficiently uncertain" to support a qualified immunity defense and that "the chief judge "cannot be held personally liable in money damages for the difficult choice he was called upon to make…." *Id*. Notably, unlike the disruption Plaintiff admits in her own pleadings, the Fifth Circuit found qualified immunity appropriate even absent any indication that the plaintiff's Facebook post caused any meaningful public outcry or that it impeded the plaintiff's ability to perform her job duties. No intervening Fifth Circuit law has made the law on *Pickering* balancing any clearer.

Results in other lawsuits applying *Pickering* balancing to First Amendment retaliation claims brought by public employees who posted about Charlie Kirk's death on social media demonstrate the uncertain nature of the law in this area. *Compare Brown v. Young*, No. 4:25cv419-MW/MJF, 2025 U.S. Dist. LEXIS 223127, at *8-9 (N.D. Fla. Nov. 13, 2025) (denying motion for preliminary injunction where defendant offered declaration asserting that plaintiff's Instagram story about Kirk's death "disrupted agency operations, required diversion of staff resources to manage responses, and raised legitimate concerns about the agency's

11

credibility and public trust"), *with Hook v. Rave*, No. 4:25-CV-04188-KES, 2025 U.S. Dist. LEXIS 190287, at *10 (D.S.D. Sep. 24, 2025) (granting tenured faculty member's motion for temporary restraining order in part because defendants' allegations of "hundreds of calls and messages" decrying faculty member's Facebook post about Kirk's death insufficiently demonstrated disruption on campus).

No clearly established law existed in September 2025 to inform the Chancellor that he could not lawfully terminate Plaintiff's employment due to the disruption from her Instagram repost. The qualified immunity defense protects the Chancellor in his individual capacity.

### CONCLUSION

Plaintiff's pleadings demonstrate that her social media post caused disruption in the workplace. To the extent the Court has jurisdiction over her First Amendment claim, she has failed to state a claim. At the very least, the qualified immunity defense protects the Chancellor in his individual capacity. This Court should dismiss Plaintiff's lawsuit.

This, the 10th day of December 2025.

                                        Respectfully submitted,

                                        **GLENN BOYCE, CHANCELLOR OF THE UNIVERSITY OF MISSISSIPPI, in his official and personal capacities**

                                        *s/J. Cal Mayo, Jr.*
                                        J. CAL MAYO, JR. (MB NO. 8492)
                                        PAUL B. WATKINS, JR. (MB NO. 102348)
                                        *Attorneys for Defendant*

OF COUNSEL:

MAYO MALLETTE PLLC
2094 Old Taylor Road, Suite 200
Oxford, Mississippi 38655
Tel: (662) 236-0055 | Fax: (662) 236-0035
*cmayo@mayomallette.com*
*pwatkins@mayomallette.com*