UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

LAUREN STOKES                                                                PLAINTIFF

v.                                                      CIVIL ACTION NO. 3:25-CV-307-GHD-RP

GLENN BOYCE, Chancellor of the
University of Mississippi, in his Official
and Personal Capacities                                                      DEFENDANT

## OPINION

Presently before the Court is the Plaintiff's motion for preliminary injunction [6] in this First Amendment retaliation action brought pursuant to 42 U.S.C. § 1983 against the Defendant Glenn Boyce, the Chancellor of the University of Mississippi, in both his official and individual capacities. The Court conducted a hearing regarding the motion on February 13, 2026.

Upon due consideration and for the reasons set forth below, the Court finds the Plaintiff's motion for injunctive relief should be denied.

### I.     Factual Background

On September 10, 2025, well-known podcaster Charlie Kirk was shot and killed during an event at a university in Utah [3, at p. 4]. That same evening, the Plaintiff, who worked at the University of Mississippi as the Executive Assistant to the Vice Chancellor for Development, reposted on her personal social media account a statement regarding Kirk

[3, at p. 5; 17, at p. 2].[1] The statement garnered a great deal of attention and was widely commented upon and negatively received [3, at p. 6]. The Plaintiff removed the statement from her account four and one-half hours later and posted an apology [3, at p. 5].

The Plaintiff reported for work the next day (September 11, 2025) [3, at pp. 5-6]. She was placed on administrative leave with pay that day at 9:00 a.m. [3, at p. 6]. Her employment was then terminated around 1:00 p.m. that same day [3, at p. 6].

The Plaintiff filed her initial complaint in this matter on October 21, 2025 [1]. She then filed an amended complaint on November 7, 2025, and thereafter moved for a preliminary injunction seeking reinstatement to employment with the University [3; 6]. The Defendant opposes the Plaintiff's motion. As noted above, the Court conducted a hearing relative to the Plaintiff's motion on February 13, 2026.

## II. Legal Standard

A district court may grant a preliminary injunction if the movant <u>clearly</u> shows:

(1)  a substantial likelihood of success on the merits;

(2)  a substantial threat that the plaintiff will suffer irreparable harm in the absence of an injunction;

(3)  that the threatened injury outweighs damage to the defendant that may result from the injunction; and

(4)  that the injunction will not disserve the public interest.

---

[1] The statement the Plaintiff reposted, in its entirety, read: "For decades, yt supremacist and reimagined Klan members like Kirk have wreaked havoc on our communities, condemning children and the populace at large to mass death for the sake of keeping their automatic guns. They have willingly advocated to condemn children and adult survivors of SA to forced pregnancy and childbirth. They have smiled while stating the reasons people who can birth children shouldn't be allowed life-saving medical care when miscarrying. They have incited and clapped for the brutalizing of Black and Brown bodies. So no, I have no prayers to offer Kirk or respectable statements against violence." @thecollectress [3, at p. 5; 17, at p. 2].

*Talley v. Jackson State Univ.*, No. 24-60400, 2025 WL 2222996, at *3 (5th Cir. Aug. 5, 2025); *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008); *Canal Authority of State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974).

"A preliminary injunction is an extraordinary and drastic remedy which should not be granted unless the movant clearly carries the burden of persuasion." *Anibowei v. Morgan*, 70 F.4th 898, 902 (5th Cir. 2023); *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976) (holding that "[m]andatory preliminary relief, which goes well beyond simply maintaining the status quo pendente lite, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party.").

### III. Analysis

#### A. Likelihood of Success on the Merits

To secure preliminary-injunctive relief, a plaintiff must first show a substantial likelihood she will succeed on the merits of his claims. *Daniels Health Sciences, L.L.C. v. Vascular Health Sciences, L.L.C.*, 710 F.3d 579. 582 (5th Cir. 2013).

The Plaintiff, who was a governmental employee, asserts a claim for First Amendment retaliation. In this motion, she seeks reinstatement to her position at the University of Mississippi [6]. A governmental employee must establish five elements in order to state a claim for First Amendment retaliation:

(1) The employee must have spoken as a private citizen and not pursuant to her official duties;

(2) The employee must have suffered an adverse employment decision;

(3) The speech in question must have involved a matter of public concern;

(4) The employee's interest in speaking must outweigh the defendant's interest in the efficient provision of public services; and

3

(5) The protected speech must have motivated the defendant's conduct.

*Wetherbe v. Texas Tech. Univ. Sys.*, 138 F.4th 296, 303 (5th Cir. 2025) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006)). To receive injunctive relief, the Plaintiff must show a substantial likelihood she will succeed on the merits of all five of these elements.

The first three elements of the Plaintiff's claim are largely undisputed, thereby weighing those elements in the Plaintiff's favor, and making the fourth and fifth elements the key in deciding whether the Plaintiff can show a likelihood of success on the merits of her claim.

The fourth element requires the Court to engage in what is known as the *Pickering* balancing test, which was first articulated by the U.S. Supreme Court in *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968). Under the *Pickering* balancing test, the Court must weigh the Plaintiff's interest, as a citizen, in commenting upon matters of public concern against the Defendant's interest, as an employer, in promoting the efficiency of the services it performs through its employees. *Pickering*, 391 U.S. at 568. The Court must decide if the Plaintiff's interest outweighs the defendant's interest. *Id.*; *Garza v. Escobar*, 972 F.3d 721, 727 (5th Cir. 2020).

The *Pickering* balancing test requires courts to weigh both the "the individual and societal interests that are served when employees speak as citizens on matters of public concern *and* to respect the needs of government employers attempting to perform their important public functions." *Garcetti*, 547 U.S. at 420 (emph. added); *Bevill v. Wheeler*, 103 F.4th 363, 378 (5th Cir. 2024); *McLin v. Twenty-First Jud. Dist.*, 79 F.4th 411, 419 (5th Cir. 2023) (holding "[i]n determining whether a public employee's speech is protected by the First Amendment, we strike a balance between 'the interests of [employees] . . .

commenting upon matters of public concern and the interest of [the government], as an employer, in promoting the efficiency of the public services it performs through its employees.'") quoting *Graziosi*, 775 F.3d at 740. The Supreme Court has further explained that "[a] government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has *some* potential to affect the entity's operations." *Garcetti*, 547 U.S. at 418 (emph. added).

In conducting this balancing test, the Court considers "whether the speech was likely to generate controversy and disruption, impede the defendant's general performance and operation, and affect working relationships necessary to the defendant's proper functioning." *Johnson v. Miller*, 126 F.4th 1020, 1030 (5th Cir. 2025). The Supreme Court has also previously recognized as pertinent considerations "whether the statement . . . impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Bevill v. Wheeler*, 103 F.4th 363, 378 (5th Cir. 2024); *Rankin v. McPherson*, 483 U.S. 378, 388 (1987). Ultimately, the Court must weigh the Plaintiff's rights to speak on matters of public concern versus "the effective functioning of the public employer's enterprise." *Rankin*, 483 U.S. at 388.

Crucially, the Supreme Court has explained it is not necessary "for an employer to allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action." *Connick v. Myers*, 461 U.S. 138, 152 (1983); *Graziosi v. City of Greenville Miss.*, 775 F.3d 731, 741 (5th Cir. 2015). Rather, "courts have consistently given substantial weight to government employers' reasonable predictions of disruption, even when the speech involved is on a matter of public concern." *Waters v. Churchill*, 511 U.S. 661, 673 (1994); *Graziosi*, 775 F.3d at 741.

5

Here, the Plaintiff argues the University suffered no actual disruption to its operations as a result of her post, but the Defendant correctly points out such a showing is not required. *Connick*, 461 at 152; *Graziosi*, 775 F.3d at 741. In any event, the Defendant argues and provides evidence that actual disruption to the University's operations did occur.

The Plaintiff's post was shared broadly on social media and eventually captured the public's attention; indeed, the reaction to the Plaintiff's social media post, according to her own testimony, was swift and substantial [Transcript of February 13, 2026, Hearing, Doc. 37, at 37-38; Boyce Decl., Doc. 17-3, at pp. 1-3;]. Both personally and via her University email account and voicemail, the Plaintiff received a significant amount of hate mail, phone calls, and emails, many of which were threatening in nature [Doc. 17-3, at p. 2; Doc. 37, at pp. 14, 34-39; Docs. 34-3, 34-4]. The Plaintiff herself testified to the level of disruption the post caused her, both personally and to her ability to conduct her job duties at the University [Doc. 37, at pp. 38; Docs. 34-3, 34-4]. The Defendant presented evidence showing that the disruption and threat of further disruption ultimately caused him to conclude that the Plaintiff's "departure from the University was needed to resolve the disruption to the University's operations." [17-3, at p. 3]. Boyce further believed the University "needed to act quickly" to end the disruption to the University's operations [*Id.*]. The disruption included the cancelling of a student phone bank event, disruption to the University's social media presence, the inability of the Development Office (where the Plaintiff was employed) to focus on its work rather than monitoring the response to the Plaintiff's post and managing the University's response, and the necessity for the University Police Department to patrol the area around the Development Office in light of

6

the Plaintiff's post and given employees' fear for their personal safety [17-3, at p. 2].

In addition to the Defendant Boyce's statements regarding the disruption the Plaintiff's post caused the University, the University's Vice Chancellor for Marketing and Communications, Lisa Stone, provided evidence that the impact upon the Development Office's operations were significant and were continuing throughout the morning of September 11, 2025, without any end in sight [Stone Decl., Doc. 17-2, at pp. 2-3]. Further, the Plaintiff's direct supervisor at the University, Charlotte Parks (the University's Vice Chancellor for Development), detailed several of the ways the Plaintiff's post disrupted the Development Office, including disruption to other employees in the Office and the necessity for a former University employee to be called in to help perform the Plaintiff's work duties given the inability of the Plaintiff to report to work and perform her work duties [Parks Decl., Doc. 17-1, at pp. 3-4].

The Court finds this evidence demonstrates the Plaintiff's speech disrupted the efficiency of the services the University performs through its employees. See *Rankin*, 483 U.S. at 388. Further, it is clear to the Court the Plaintiff's post was "likely to generate controversy and disruption, impede the defendant's general performance and operation, and affect working relationships necessary to the defendant's proper functioning;" it is further clear to the Court the Plaintiff's post "impeded the performance of her duties" and "interfered with the regular operation of the enterprise." *Rankin*, 483 U.S. at 388; *Johnson*, 126 F.4th at 1030; *Bevill*, 103 F.4th at 378.

Given these findings and balancing the *Pickering* factors, the Court finds the Plaintiff has not shown that the factors weigh in her favor. The Court finds she has not shown, therefore, that her speech was likely constitutionally protected and that she is

7

substantially likely to succeed on the merits of her retaliation claim. *Pickering*, 391 U.S. at 568. The Plaintiff's motion for preliminary injunction, therefore, shall be denied on this basis.

### B. Irreparable Injury

While the Court denies the Plaintiff's motion based on her failure to demonstrate she is substantially likely to succeed on the merits of her claim, the Court further finds the Plaintiff has failed to show she is likely to suffer irreparable harm. To satisfy this prong of the preliminary injunction test, the Plaintiff must show she is "likely to suffer irreparable harm," that is, harm for which there is no adequate remedy at law. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Louisiana v. Biden*, 55 F.4th 1017, 1033-34 (5th Cir. 2022). Harm is irreparable "if it cannot be undone through monetary remedies." *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012).

While the Supreme Court has held, in what is known as the "*Elrod* maxim," that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury" when a court is considering injunctive relief, it has also held that harm resulting from an employer's decision to terminate a plaintiff's employment is typically not irreparable because that harm can be compensated by monetary damages. *Mahoud v. Taylor*, 606 U.S. 522 (2025); *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Sampson v. Murray*, 415 U.S. 61, 90 (1974); *Morgan v. Fletcher*, 518 F.3d 236, 240 (5th Cir. 1975). Indeed, even in First Amendment retaliation cases against governmental entities, courts in this District have held that loss of employment or income is not sufficient to establish irreparable harm. See, e.g., *Holcombe v. City of Tupelo*, No. 1:08CV288-SA-

8

SAA, 2009 WL 87420, at *2 (N.D. Miss. Jan. 12, 2009); *Smith v. Okolona Mun. Separate Sch. Dist.*, No. 1:97CV226-D-A, 1997 WL 560922, at *2 (N.D. Miss. July 31, 1997).

Here, the Plaintiff argues the Court should, in essence, presume she suffered irreparable harm based upon the nature of her claim for First Amendment retaliation, given she has offered no proof of other irreparable harm. The Fifth Circuit has made clear, however, that mere "invocation of the First Amendment cannot substitute for the presence of an imminent, non-speculative irreparable injury." *Google, Inc. v. Hood*, 822 F.3d 212, 228 (5th Cir. 2016) (further holding "[a] preliminary injunction is not appropriate, however, 'unless the party seeking it can demonstrate that First Amendment interests are either threatened or in fact being impaired at the time relief is sought.'" And, "[t]hus, invocation of the First Amendment cannot substitute for the presence of an imminent, non-speculative irreparable injury.") (citing *Nat'l Treasury Emp. Union v. United States*, 927 F.2d 1253, 1254 (D.C. Cir. 1991)); *Wagner v. Taylor*, 836 F.2d 566, 577 n. 76 (D.C. Cir. 1987); *Elrod*, 427 U.S. at 373.

Federal courts, including the Supreme Court, have likewise made clear that the loss of a job, even a government job, does not typically constitute irreparable harm in and of itself. *Sampson*, 415 U.S. at 88-90. Indeed, it appears axiomatic to the Court that a terminated employee can be made whole by money damages (and perhaps reinstatement) if she wins her case. *Id.* at 90 ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.").

Here, the Plaintiff has offered no proof of an irreparable injury, other than her assertion that the Court should presume irreparable harm because she has alleged a First

Amendment violation. In other words, the Plaintiff relies solely upon the *Elrod* maxim to attempt to establish irreparable harm. As noted above, however, merely invoking the First Amendment cannot substitute for the presence of an imminent, non-speculative injury. *Google, Inc.*, 822 F.3d at 228. While the *Elrod* maxim applies in First Amendment cases that seek to enjoin a law that is actively chilling a plaintiff's speech, the Plaintiff here does not challenge a current or prospective law or other governmental action that is actively chilling her speech. Rather, she challenges the Defendant's decision to terminate her employment, which is a single and discrete act that took place entirely in the past. The Court finds therefore the *Elrod* maxim does not apply in this case, and the Plaintiff cannot simply rely upon it to establish irreparable harm. Given the fact the Plaintiff asserts no other ground demonstrating she is likely to suffer irreparable harm in the absence of a preliminary injunction, the Court finds the Plaintiff has failed to establish the existence of irreparable harm on her part.

### C. Threatened Harm and Public Interest

Given the Court's ruling above, it is not necessary for the Court to decide whether "the threatened injury outweighs any harm that may result from the injunction to the non-movant" or whether granting "the injunction will not undermine the public interest." *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1051, 1056 (5th Cir. 1997); *Gonzales v. Mathis Indep. Sch. Dist.*, 978 F.3d 291, 294 (5th Cir. 2020). The Court therefore finds these factors need play no role in the Court's decision.

### IV. Conclusion

For all of the foregoing reasons, the Court finds the Plaintiff's motion for preliminary injunction [6] is DENIED.

An order in accordance with this opinion shall issue this day.

This, the 10th day of March, 2026.

                                                  SENIOR U.S. DISTRICT JUDGE