UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

LAUREN STOKES                                                     PLAINTIFF

v.                                          CIVIL ACTION NO. 3:25-CV-307-GHD-RP

GLENN BOYCE, Chancellor of the
University of Mississippi, in his Official
and Personal Capacities                                          DEFENDANT

---

## OPINION

---

Presently before the Court is the Defendant's motion to dismiss this 42 U.S.C. §

1983 First Amendment retaliation action. Upon due consideration and for the reasons set

forth below, the Court finds the Defendant's motion should be granted and the Plaintiff's

claims dismissed.

### I.        Background

On September 10, 2025, well-known podcaster Charlie Kirk was shot and killed

during an event at a university in Utah [3, at p. 4]. That same evening, the Plaintiff, who

worked at the University of Mississippi as the Executive Assistant to the Vice Chancellor

for Development, reposted on her personal social media account a statement regarding Kirk

[3, at p. 5; 17, at p. 2].[1] The statement garnered a great deal of attention and was widely

---

[1]        The statement the Plaintiff reposted, in its entirety, read: "For decades, yt supremacist and
reimagined Klan members like Kirk have wreaked havoc on our communities, condemning
children and the populace at large to mass death for the sake of keeping their automatic guns. They
have willingly advocated to condemn children and adult survivors of SA to forced pregnancy and
childbirth. They have smiled while stating the reasons people who can birth children shouldn't be
allowed life-saving medical care when miscarrying. They have incited and clapped for the
brutalizing of Black and Brown bodies. So no, I have no prayers to offer Kirk or respectable
statements against violence." @thecollectress [3, at p. 5; 17, at p. 2].

commented upon and negatively received [3, at p. 6]. The Plaintiff removed the statement from her account four and one-half hours later and posted an apology [3, at p. 5].

The Plaintiff reported for work the next day (September 11, 2025) [3, at pp. 5-6]. She was placed on administrative leave with pay at 9:00 a.m. [3, at p. 6]. Her employment was then terminated around 1:00 p.m. that same day [3, at p. 6].

The Plaintiff filed her initial complaint in this matter on October 21, 2025 [1]; she then filed an amended complaint on November 7, 2025 [3]. In her amended complaint, the Plaintiff seeks: (1) a declaratory judgment that the Defendant has violated the Plaintiff's First Amendment right to free speech; (2) a preliminary and permanent injunction requiring the Defendant to reinstate the Plaintiff's employment; (3) compensatory and punitive damages; and (4) costs and fees pursuant to 42 U.S.C. § 1988. [3, at p. 20]. The Court has already denied the Plaintiff's request for preliminary injunctive relief [45, 46].

The Defendant has filed a motion to dismiss [15], seeking to dismiss the Plaintiff's complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The Defendant asserts he is entitled to Eleventh Amendment immunity in his official capacity and to qualified immunity in his individual capacity. The Plaintiff opposes the Defendant's motion.

## II.     Legal Standard

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. Fed. R. Civ. P. 12(b)(1). Under Rule 12(b)(1), a claim is properly dismissed for lack of subject matter jurisdiction when the court lacks statutory or constitutional authority to adjudicate the claim. *Home Builders Assoc. of Mississippi, Inc. v. City of Madison*, 143 F.3d 1006,

1010 (5th Cir. 1998). When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the "jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *Ramming*, 281 F.3d at 161. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).

When deciding a Rule 12(b)(6) motion to dismiss, the Court is limited to the allegations set forth in the complaint and any documents attached to the complaint. *Walker v. Webco Indus., Inc.*, 562 F. App'x 215, 216–17 (5th Cir. 2014) (per curiam) (citing *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839 (5th Cir. 2004)). "[A plaintiff's] complaint therefore must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Phillips v. City of Dallas, Tex.*, 781 F.3d 772, 775–76 (5th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007))). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955).

In other words, "plaintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *Webb v. Morella*, 522 F. App'x 238, 241 (5th Cir. 2013) (per curiam) (quoting *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152–53 (5th Cir. 2010) (internal quotation marks omitted)). "[C]onclusory

3

allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Id.* (quoting *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) (internal quotation marks omitted)). "Dismissal is appropriate when the plaintiff has not alleged 'enough facts to state a claim to relief that is plausible on its face' and has failed to 'raise a right to relief above the speculative level.' " *Emesowum v. Houston Police Dep't*, 561 F. App'x 372, 372 (5th Cir. 2014) (*per curiam*) (quoting *Twombly*, 550 U.S. at 555, 570, 127 S. Ct. 1955).

### III.    Analysis

#### A.  Eleventh Amendment Immunity

As for Eleventh Amendment immunity, which the Defendant asserts regarding the claims against him in his official capacity, the Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizen of another State . . ." U.S. Const. Amend. XI. In essence, unless an exception applies, Eleventh Amendment immunity means "non-consenting states may not be sued by private individuals in federal court," and it encompasses "suits by citizens against their own states." *Board of Trs. Of the Univ. of Alabama v. Garrett*, 526 U.S. 356, 363 (2001). This immunity extends to any entity deemed an arm or alter ego of the state, and can include state officials sued in their official capacity, because in such instances, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Id.*; *Hafer v. Melo*, 502 U.S. 21, 25 (2000); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). In a case involving Eleventh Amendment immunity, if the defendant is entitled to immunity, the court lacks subject matter

4

jurisdiction over the plaintiff's claims. *Mahogany v. La. State Sup. Court*, 636 Fed. Appx. 636 (5th Cir. 2008) (holding that "[a] federal district court lacks subject matter jurisdiction where the named defendants are protected by Eleventh Amendment immunity.").

Here, the University of Mississippi is an arm of the State of Mississippi and is immune from the Plaintiff's claims. *Doe v. Univ. of Miss.*, 361 F. Supp. 3d 597, 604-06 (S.D. Miss. 2019). Further, because "a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents," state officials are entitled to Eleventh Amendment immunity for claims asserted against them in their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (quoting *Brandon v. Holt*, 469 U.S. 464, 471 (1985)); *Bryant v. Tex. Dep't of Aging & Disability Servs.*, 781 F.3d 764, 769 (5th Cir. 2015) ( holding the Eleventh Amendment bars federal "suits against a state, a state agency, or a state official in his official capacity unless that state has waived its sovereign immunity or Congress has clearly abrogated it."); *Chaney v. Louisiana Work Force Comm'n*, 560 Fed. Appx. 417, 418 (5th Cir. 2014).

The Plaintiff argues that the Eleventh Amendment "is not an obstacle to this case" and, in spite of the clear contours of the immunity provided to state officials in their official capacities by the Eleventh Amendment, the Plaintiff argues she "may obtain a declaration that Boyce in his official capacity is violating her rights in the present by failing to reinstate her." This assertion is incorrect under these facts. While the Plaintiff is correct that, under *Ex Parte Young*, 209 U.S. 123 (1908), she could pursue a claim alleging an *ongoing* violation of federal law and seeking prospective relief, the Fifth Circuit has made clear a termination from employment is "fundamentally retrospective because it does not relate to an ongoing violation of [the plaintiff's] federal rights; instead it pertains to [her]

5

termination." *Corn v. Miss. Dep't of Public Safety*, 954 F.3d 268, 276 (5th Cir. 2020). Accordingly, the Court finds the Defendant is immune, in his official capacity, from the Plaintiff's claims for damages and declaratory relief. Those claims shall therefore be dismissed.

### *B. Qualified Immunity*

As for the Plaintiff's claims against the Defendant in his individual capacity and the Defendant's assertion of qualified immunity regarding those claims, "qualified immunity serves to shield . . . government officials from civil liability for damages based upon the performance of discretionary functions if the official's acts were objectively reasonable in light of then clearly established law." *Thompson v. Upshur County, Texas*, 245 F.3d 447, 456 (5th Cir. 2001); see *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016) ("Qualified immunity protects officers from suit unless their conduct violates a clearly established constitutional right.") (quoting *Mace v. City of Palestine, Tex.*, 333 F.3d 621, 623 (5th Cir. 2003)). "Ultimately, 'the central concern is whether the official has fair warning that his conduct violates a constitutional right.'" *McLin v. Twenty-First Jud. Dist.*, 79 F.4th 411, 418 (5th Cir. 2023) (citing *Clarkston v. White*, 943 F.3d 988, 993 (5th Cir. 2019).

Qualified immunity defenses are analyzed under a two-prong inquiry. *Kennedy v. City of Arlington, Texas*, No. 25-10259, 2026 WL 293322, at *3 (5th Cir. Feb. 4, 2026); see *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Courts may address the prongs "in either order" and may "resolve the case on a single prong." *Cloud v. Stone*, 993 F.3d 379, 383 (5th Cir. 2021) (quoting *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020)). Under the first prong, the plaintiff must plausibly allege that "[the official] violated a federal

statutory or constitutional right." *Id.* The second prong requires that the unlawfulness of the conduct be "clearly established at the time" of the alleged misconduct. *Id.* (citation omitted). Once a defendant asserts the qualified immunity defense, the plaintiff bears the burden of negating qualified immunity, but all inferences are drawn in the plaintiff's favor. *Talley v. Jackson State Univ.*, No. 24-60400, 2025 WL 2222996, at *2 (5th Cir. Aug. 5, 2025); *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)).

Here, the Plaintiff's claims relate to her termination from employment by the Defendant on September 11, 2025 [3]. The Plaintiff alleges her termination was in violation of her First Amendment rights [3, at 20]. A governmental employee must establish five elements to state a claim for First Amendment retaliation:

(1) The employee must have spoken as a private citizen and not pursuant to her official duties;

(2) The employee must have suffered an adverse employment decision;

(3) The speech in question must have involved a matter of public concern;

(4) The employee's interest in speaking must outweigh the defendant's interest in the efficient provision of public services; and

(5) The protected speech must have motivated the defendant's conduct.

*Wetherbe v. Texas Tech. Univ. Sys.*, 138 F.4th 296, 303 (5th Cir. 2025) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006)).

Determining whether a public employee has been discharged in violation of her First Amendment free speech rights utilizes a case-by-case inquiry on two levels. The Supreme Court's ruling in *Connick v. Myers*, 461 U.S. 138 (1983), requires separate fact-specific considerations of (1) whether the speech is constitutionally protected and (2) if so, whether the discharge can be justified in order for the public office properly to perform its

7

function. *Connick*, 461 U.S. at 148–50. In First Amendment retaliation cases, courts must therefore balance the First Amendment interest in protecting an employee's freedom of expression against the government's interest in maintaining discipline and efficiency in the workplace. *Rankin v. McPherson*, 483 U.S. 378 (1987); *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968); *Noyola v. Texas Dep't of Hum. Res.*, 846 F.2d 1021, 1025 (5th Cir. 1988).

It is axiomatic that "public employees do not surrender all their First Amendment rights by reason of their employment." *Garcetti*, 547 U.S. at 417. Rather, some speech, even if it "concerns information related to or learned through public employment," deserves protection because "'[g]overnment employees are often in the best position to know what ails the agencies for which they work.'" *Lane v. Franks*, 573 U.S. 228, 236 (2014). Yet, "[g]overnment employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services." *Garcetti*, 547 U.S. at 418; *McLin*, 79 F.4th at 419.

In determining whether a public employee's speech is protected by the First Amendment, the Court must therefore "strike a balance between 'the interests of [employees] . . . commenting upon matters of public concern and the interest of [the government], as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Graziosi*, 775 F.3d at 740 (quoting *Pickering*, 391 U.S. at 568). In particular, the Court must evaluate whether the speech has caused disruption, impeded performance, or "affected working relationships necessary to the department's proper functioning." *Brawner v. City of Richardson, Texas*, 855 F.2d 187, 192 (5th Cir. 1988).

"When close working relationships are essential to fulfilling public responsibilities, a wide degree of deference to the employer's judgment is appropriate." *Connick*, 461 U.S. at 151-52; *McLin*, 79 F.4th at 419.

The Fifth Circuit has held that one consequence of this case-by-case balancing (*i.e.*, conducting the *Pickering* balancing test) is its implication regarding the qualified immunity of public officials whose actions are alleged to have violated an employee's First Amendment rights. Indeed, "[t]here will rarely be a basis for [an] *a priori* judgment that the termination or discipline of a public employee violated 'clearly established' constitutional rights. *Connick* and *Rankin* exemplify the difficulty of delineating any bright-line constitutional rule that might furnish a test for denying qualified immunity in such actions." *Noyola*, 846 F.2d at 1025.

In light of this precedent, the situation the Defendant was faced with on September 11, 2025, was that the Plaintiff's social media post had been widely shared on social media and had caused a swift and substantial negative reaction, with the Plaintiff being attacked online, facing threats to her physical safety, seeking guidance from the University's Human Resources office, and meeting with officers from the University Police Department [3, at pp. 6, 18]. Accordingly, the Defendant was required to decide, in real time, whether the Plaintiff's interest or the University's interest outweighed the other. *Pickering*, 391 U.S. at 568.

Recent caselaw from the Fifth Circuit regarding qualified immunity in the First Amendment retaliation context includes *McLin v. Twenty-First Judicial District*, 79 F.4th 411 (5th Cir. 2023), where the chief judge for a state judicial district in Louisiana terminated the plaintiff clerical worker's employment after another employee discovered a

9

social media post of the plaintiff that expressed approval of the actions of a motorist who drove through a crowd of people attending a rally protesting George Floyd's murder in 2020. *McLin*, 79 F.4th at 414. After learning of the post, which did not go "viral" or cause public disruption, the chief judge terminated the plaintiff's employment at the court. *Id.* Even though there was no evidence the *McLin* plaintiff's social media post caused any meaningful public outcry or disruption or that it impeded the plaintiff's ability to perform her job duties, the Fifth Circuit held the chief judge was protected by qualified immunity at the Rule 12(b)(6) stage of the case. *McLin*, 79 F.4th at 414. The Fifth Circuit held the law was sufficiently uncertain so as to support the decisionmaker's defense of qualified immunity. *McLin*, 79 F.4th at 420.

Here, the Defendant presents an even stronger case for qualified immunity. Considering the Defendant's substantial interest in maintaining the efficient operation of the Plaintiff's department and the University as a whole, and given the level of disruption the Plaintiff's post caused the University, the Court finds the evidence weighs against the Plaintiff. In other words, the Plaintiff has not shown the Defendant violated a clearly established constitutional right. For at the very least, as the Fifth Circuit held in *McLin*, the law is sufficiently uncertain so as to support the Defendant's defense of qualified immunity. In the end, the Defendant, whose duty was to ensure the efficient operation of the University and the Plaintiff's department, determined the Plaintiff's post was sufficiently disruptive to those operations and he lawfully fired the Plaintiff as a result.

In sum, the overwhelming weight of the relevant factors point to one result: the Plaintiff cannot rebut the Defendant's qualified immunity defense because she cannot show her interest in her social media post outweighed the Defendant's interest in the University's

10

efficient operation. *Pickering*, 391 U.S. at 568. Having failed to show a violation of her constitutional rights or that the unlawfulness of the Defendant's conduct was "clearly established at the time" of the alleged misconduct, the Court finds the Defendant is entitled to qualified immunity and the Plaintiff's First Amendment retaliation claim against the Defendant in his individual capacity must be dismissed.

**IV.     Conclusion**

For all of the foregoing reasons, the Court finds the Defendant's motion to dismiss [15] should be granted and the Plaintiff's claims dismissed.

An order in accordance with this opinion shall issue this day.

This, the __16__ day of March, 2026.

_____
SENIOR U.S. DISTRICT JUDGE